UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NEAL NELSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 10 C 1735 |
| | ) |
| UNITED STATES ARMY, | ) Judge Rebecca R. Pallmeyer |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Neal Nelson ("Plaintiff or "Nelson"), filed two Freedom of Information Act ("FOIA") requests for information concerning 45 non-government organizations that paid the United States Army for use of its computer network testing facility from 2001 to 2009. The Army refuses to release the information without first providing pre-disclosure notifications to the organizations that had submitted private information to the Army in the course of product testing. The Army expects Plaintiff to pay the costs associated with such notifications, but Plaintiff is unwilling to do so. He now brings this *pro se* action against the Army under 5 U.S.C. § 552, seeking disclosure of the names of the non-government organizations, the amounts each organization paid the Army, and the dates on which the organizations used the Army's facilities. Plaintiff and Defendant have filed cross motions for summary judgment, both of which are before the court at this time. For the following reasons, Defendant's motion is granted and Plaintiff's motion is denied.

## FACTUAL BACKGROUND

The Army operates a Technology Integration Center ("TIC") in Fort Huachuca, Arizona where non-government commercial vendors can submit their products for evaluation to ensure "compatibility with the existing Army computer network infrastructure."[1] (Declaration of Caryn L.R.

---

[1] Defendant provides no details on the identities of these non-government commercial vendors or the exact products they offer. As best the court can determine, these commercial vendors manufacture computer software and network equipment that they hope to market for use
(continued...)

Hargrave (hereinafter, "Hargrave Decl.") ¶ 5, Ex. A to Def.'s 56.1 ¶ 2.) As Caryn Hargrave, the FOIA attorney for the United States Army Communications and Electronics Command, explained in her declaration, any "non-government commercial vendors seeking to do business with the Army must submit their products for testing at the TIC for consideration and approval for purchase by the Army." (*Id.*) Successful performance in the testing process, which is paid for by the vendors themselves, enhances the likelihood that the vendors will ultimately be able to sell their products to the Army. Hargrave also noted that "the TIC and similarly approved Army labs [are the only facilities] that have the capabilities to do this type of testing." (*Id.* ¶ 8.)

Plaintiff's interest in this matter began when he suspected that the Army's commercial testing activities at the TIC were competing with Plaintiff's own private computer testing laboratory, which provides "fee-based testing services to commercial firms that manufacture computer and network equipment."[2] (Compl. ¶ 2-6.) On September 12, 2007, Plaintiff sent his first FOIA request to the U.S. Army Garrison in New Jersey seeking access to: "[i]nvoices issued by the government to all (approximately 30) non-government organizations that have paid to use the 'commercial' testing facilities at the [TIC] . . . between 01 January 2001 and [September 12, 2007]." (FOIA Request of 9/12/07, Ex. 1 to Compl.) Plaintiff agreed to pay the reasonable duplication fees for processing the request, but requested a waiver of all other fees because "disclosure of the requested information . . . is in the public interest and . . . likely to contribute significantly to the public understanding of the operations or activities of the Army." (*Id.*) Plaintiff further stated that

---

[1](...continued)
by the Army—hence the need for testing at the Army's computer testing facility.

[2] Plaintiff claims that he issued the FOIA requests to determine whether the Army was violating Army Policy 73-1 by operating the TIC. That Policy states: "Use of any Army test facility by a commercial enterprise is allowed only if it does not increase the cost to operate the facilities and after ensuring that the Army is not competing with [the] U.S. commercial sector in providing such services." Army Regulation 73-1, Test and Evaluation Policy §7-4(b) (2006), *available at* http://armypubs.army.mil/epubs/pdf/R73_1.pdf.

2

he was not a commercial requester and that he sought the information only for personal use. (FOIA Request of 9/12/07, Ex. 1 to Compl.)

Army FOIA Officer Ellen Edwards responded to Plaintiff's first request on October 1, 2007, informing him that there were "no records [directly] responsive to this request."[3] (Letter from Edwards to Nelson of 10/1/2007, Ex. 2 to Compl.) Edwards did, however, offer to provide information on the "names of companies and the amounts of money they spent on testing," if Plaintiff agreed to pay the $600 fee associated with (1) gathering all available data, (2) sending each company a pre-disclosure notification of its right to object to disclosure of information, and (3) reviewing the pre-disclosure responses.[4] (Letter from Edwards to Nelson of 10/1/2007, Ex. 2 to Compl.) Plaintiff responded to Officer Edwards' letter on October 5, 2007, stating that the information offered by the Army would satisfy his request, but that he would not pay the $600 fee because, in his view, pre-disclosure notifications were unnecessary. (Letter from Sagan to Nelson of 5/16/2008, Ex. 3 to Compl.)

After continued back-and-forth correspondence between Officer Edwards and Plaintiff, on May 16, 2008, the Army's Initial Denial Authority formally denied Plaintiff's FOIA request. (Letter

---

[3] Officer Edwards explained in her letter to Plaintiff that the testing "by the TIC is . . . based on testing work plans created by the TIC for each test procedure. Companies that have testing done by the TIC pay an estimated amount based on the information developed in the testing work plan. Once the testing is complete, companies are refunded unused funds. . . . No invoices are created." (Letter from Edwards to Nelson of 10/1/2007, Ex. 2 to Compl.) Presumably one can calculate the difference between the estimated TIC fees based information developed in the testing work plan and the dollar amounts the companies actually paid. Officer Edwards did not offer to provide such information.

[4] Officer Edwards explained to Plaintiff how the Army reached the $600 total cost by listing the various steps involved in the pre-disclosure notification process in detail: "It will take approximately 2 hours for professional level personnel to search and compile the information, which at standard rates would cost $44 per hour. We would then be required to send each company a pre-disclosure notification to give them the opportunity to request that their information not be disclosed. This would take approximately 8 hours for clerical personnel at $20 per hour. Analysis and review of pre-disclosure notifications and responses would take approximately 8 hours for professional personnel at $44 per hour." (Letter from Edwards to Nelson of 10/1/2007, Ex. 2 to Compl.)

from Sagan to Nelson of 5/16/2008, Ex. 3 to Compl.) The initial denial letter explained that under Executive Order 12,600, Predisclosure Notification Procedures for Confidential Commercial Information (June 23, 1987), government agencies are required to notify companies if any potentially confidential commercial information has been requested under FOIA and give them an opportunity to object. The letter stated, further, that Plaintiff's request was denied due to his refusal to the $600 pre-disclosure notification fee. (*Id.*) Plaintiff promptly appealed the denial in a letter dated May 29, 2008, again objecting to the requirement that he pay any pre-disclosure notification costs. Plaintiff contended that pre-disclosure notification was not appropriate because the records he requested did not include "any confidential or trade secret data." Plaintiff stated that he was willing to pay not more than $88 (for two hours at $44 per hour), which was in his estimation the reasonable cost of "collecting information" from Army files. (Letter from Nelson to Secretary of Army of 5/29/2008, Ex. 4 to Compl.)

On January 22, 2009, Plaintiff issued a second FOIA request. This second request repeated Plaintiff's original demand for information about the non-government organizations that had paid to use the TIC, but more specifically sought the names of the organizations, the amounts they paid, and the dates that the organizations used the TIC facilities. (FOIA request of 01/22/09, Ex. 5 to Compl.) On February 9, 2009, Plaintiff received a letter from the Army's Office of General Counsel affirming the denial of his first FOIA request. The letter advised Plaintiff that his FOIA request triggered the pre-disclosure notification process outlined in Executive Order 12,600 because "given the nature of the use of the TIC, the disclosure of which companies were using it and how much they paid could, in itself, cause those companies substantial competitive harm," and therefore, the information might be shielded from disclosure by § 552(b)(4), a FOIA exemption for trade secrets. (Letter from Bucholz, Associate Deputy General Counsel to Nelson of 02/9/09, Ex. 7 to Compl.) Soon thereafter, Plaintiff received a letter from Officer Edwards in which she observed that Plaintiff's second FOIA request was substantively the same as his first, except that the second

request covered the additional period of time from 2007 to 2009. (Letter from Edwards to Nelson of 03/19/09, Ex. 8 to Compl.) Officer Edwards stated that pre-disclosure notifications were required for the 13 additional companies that used the TIC during the additional time period covering Plaintiff's new request and estimated the fee (including pre-disclosure notification) for his second FOIA request to be $599.[8] Plaintiff responded to Edwards' letter on May 1, 2009, again disputing the need for pre-disclosure notification and insisting that the Army provide the requested information at no charge. (Letter from Nelson to Edwards of 05/1/09, Ex. 11 to Compl.)

On June 12, 2009, Plaintiff received a formal denial of his second FOIA request from the Initial Denial Authority, citing Plaintiff's continued refusal to pay the costs associated with pre-disclosure notification. (Letter from Initial Denial Authority to Nelson of 6/12/09, Ex. 12 to Compl.) Plaintiff then appealed this denial on June 22, 2009. (Letter from Nelson to Secretary of Army of 6/22/09, Ex. 13 to Compl.) Finally, on March 1, 2010, the Army's Office of General Counsel affirmed the denial of Plaintiff's second FOIA request, again noting that Plaintiff's request could reasonably be expected to cause substantial competitive harm to the commercial vendors. (Letter from Buchholz to Nelson of 3/1/2010, Ex. 17 to Compl.) Hargrave's declaration explains the various ways disclosing the information Plaintiff sought in his second FOIA request might cause competitive harm: (1) competitors could learn "what stage in the product release cycle a particular vendor's product is," enabling "competitors to identify opportunities in developing similar products"; (2) competitors could benefit from knowing "the amount incurred by the vendor in conducting the TIC testing, possibly enabling the competitor to evaluate the impact of such costs on the vendor's

---

[8] Hargrave explained that the cost differences between Plaintiff's first and second FOIA requests occurred because "[f]or Nelson's first FOIA request, the review time estimates were calculated to require approximately .25 hours for each of the 32 affected vendors. In fact, because the amount of time initially allocated to each vendor for correspondence and review was determined to be unrealistically low (only 15 minutes per vendor), that time estimate was increased to .5 hours for purposes of Nelson's second FOIA request . . . ." (Hargrave Decl. ¶ 14.) Although it is not entirely clear, the court assumes, then, that Nelson's second FOIA request would cost $1199 in total ($600 + $599).

5

revenue"; and (3) "[e]ven disclosing the very fact that certain vendors had their products tested could cause competitive harm to the vendor." (Hargrave Decl. ¶¶ 10-11.)

After finally exhausting his administrative remedies, Plaintiff filed the instant complaint on March 18, 2010, seeking to compel disclosure of the requested material.

## ANALYSIS

Both Plaintiff and Defendant have filed cross-motions for summary judgment pursuant to FED. R. CIV. P. 56. Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "On cross-motions for summary judgment, [a court] construe[s] all facts and inferences therefrom in favor of the party against whom the motion under consideration was made." *Five Points Road Joint Venture v. Johanns*, 542 F.3d 1121, 1124 (7th Cir. 2008) (citing *Foskett v. Great Wolf Resorts, Inc.*, 518 F.3d 518, 522 (7th Cir. 2008)). In a FOIA case, the federal agency "bears the burden of establishing that the search [for the requested information] was adequate and that each responsive document is either produced, unidentifiable, or exempt from production." *Essex Electro Engineers, Inc. v. U.S. Secretary of Army*, 686 F. Supp.2d 91, 93 (D.D.C. 2010) (citing *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485, 1489 (D.C. Cir. 1984)).

Defendant here argues that the Army could not comply with Plaintiff's FOIA request because Plaintiff failed to pay the costs associated with notifying the non-government vendors who used the TIC about Plaintiff's request. Plaintiff contends that Defendant improperly withheld this information because pre-disclosure notification was not required for his request. Plaintiff further argues that even if pre-disclosure notification was required, Defendant inflated the costs required to process his requests, failed to disclose the names of the individuals responsible for denying the requests, and failed to make timely determinations about the requests. The court addresses each argument

in turn.[9]

## I. Applicable Statutes

The FOIA generally requires government agencies to make agency records available to the public upon request. 5 U.S.C. § 552. Information subject to the FOIA may, however, be withheld by a government agency if it fits within one of nine statutory exemptions. 5 U.S.C. § 552(b)(1)-(9). The burden of proof rests upon the government to demonstrate that any requested information falls within a particular FOIA exemption. *Silets v. U.S. Dep't. of Justice*, 945 F.2d 227, 228 (7th Cir. 1991). Exemption 4, 5 U.S.C. § 552(b)(4), authorizes the government to withhold "trade secrets and commercial or financial information obtained from a person and privileged or confidential." § 552(b)(4). By shielding information that is "(a) commercial or financial, (b) obtained from a person, and (c) privileged or confidential," Exemption 4 serves the "dual purpose" of protecting the "interests of both the Government and the individual [supplying the information]." *Getman v. NLRB*, 450 F.2d 670, 673 (D.C. Cir. 1971) (quoting *Consumers Union of United States, Inc. v. Veterans Admin.*, 301 F. Supp. 796, 802 (S.D.N.Y. 1969)); *Nat'l Parks and Conservation Ass'n v. Morton*, 498 F.2d 765, 767 (D.C. Cir. 1974).

Under Executive Order 12,600, all agencies subject to the FOIA must "establish procedures to notify submitters of records containing confidential commercial information . . . when those records are requested under the [FOIA] . . . if after reviewing the request, the responsive records, and any appeal by the requester, the department or agency determines that it may be required to

---

[9] Plaintiff's complaint presents several bases for FOIA violations as separate courts. The court addresses all of Plaintiff's challenges to the pre-disclosure notification process (Counts I, II, and VI) in section II below. Plaintiff's remaining challenges, reflected in Counts III-V, are discussed in section III below. Count VII alleges a violation of the Administrative Procedures Act (APA), 5 U.S.C. § 701, *et. seq.*. That count warrants little discussion because, as Defendant points out, the Seventh Circuit has ruled the APA does not provide an independent cause of action when FOIA provides an adequate remedy. *See Walsh v. U.S. Dep't of Veterans Affairs*, 400 F.3d 535, 538 (7th Cir. 2005) (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) ("'Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action . . . .'")).

disclose the records." Exec. Order No. 12,600, 52 Fed. Reg. 23781 (June 23, 1987). The Order defines "confidential commercial information" as "records provided to the government by a submitter that arguably contain material exempt from release under Exemption 4 of the Freedom of Information Act, 5 U.S.C. § 552(b)(4), because disclosure could reasonably be expected to cause substantial competitive harm." Exec. Order No. 12,600(2)(a). A submitter is "any person or entity who provides confidential commercial information to the government," including, but not limited to "corporations, state governments, and foreign governments." Exec. Order No. 12,600(2)(b). Section 4 of the Order states that during this pre-disclosure notification period, each agency shall "afford the submitter a reasonable period of time in which the submitter or its designee may object to the disclosure of any specified portion of the information and to state all grounds upon which disclosure is opposed." Exec. Order No. 12,600(4). The pre-disclosure notification process outlined in Executive Order 12,600 is also implemented as part of the Department of Defense's FOIA release and processing procedures under 32 C.F.R. § 286.23. Similar to Executive Order 12,600, the regulation provides that a submitter must be promptly notified of a FOIA request and afforded reasonable time to present objections when the received request falls under § 552(b)(4) or the record was obtained from a non-U.S. Government source. 32 C.F.R. § 286.23(h)(1). It further states: "This practice is required for those FOIA requests for data not deemed clearly exempt from disclosure under exemption (b)(4) of 5 U.S.C. § 552."

## II.     Counts I, II & VI—Pre-disclosure Notification

The central issue in the case is whether the Army acted properly in requiring the pre-disclosure notification process (as outlined above) before granting Plaintiff's FOIA request. To support its claim that pre-disclosure notification was required in this instance, Defendant relies heavily upon *OSHA Data/CIH, Inc. v. U.S. Dept. of Labor*, 220 F.3d 153 (3d Cir. 2000) (requiring OSHA Data to pay costs associated with pre-disclosure notification and evaluation under agency regulations). In response, Plaintiff advances two theories as to why the information he requested

is not subject to the pre-disclosure notification process: (1) unlike the records sought in *OSHA Data*, the records Plaintiff requested were internally generated by the Army, and (2) none of the information requested by Plaintiff constitutes confidential data of the kind protected by FOIA Exemption 4. The court finds each of Plaintiff's arguments unconvincing for the reasons that follow.

### A. *OSHA Data* Standard

In *OSHA Data*, the Third Circuit directly addressed the issue of pre-disclosure notification procedures within the FOIA context.[10] The plaintiff in that case, OSHA Data, collected regulatory compliance information from various federal agencies and then reproduced detailed reports of that information for its corporate clients. *OSHA Data*, 220 F.3d at 156. As part of its business, OSHA Data made several FOIA requests for records from the Department of Labor about work-related injuries and illnesses. After its requests were denied, the company filed a complaint to compel the DOL to produce the information. *Id.* at 158. DOL moved to stay the matter, arguing that it was first "required [under its own regulations] to implement a process of notifying the affected companies before it could determine whether the requested records were subject to disclosure under FOIA (or fell within Exemption 4)."[11] *Id.* OSHA Data refused to pay the estimated $1.7 million "review costs," citing the agency's failure to show "a need for the notification procedures that led to the imposition of [the] projected costs." *Id.* at 159, 164.

In affirming the district court's dismissal of plaintiff's claim based on its unwillingness to pay, the Third Circuit explained that the DOL standard "for triggering mandatory pre-disclosure notification is obviously much less burdensome than the standard for justifying an ultimate withholding of information under Exemption 4. . . . The DOL need not show that the disclosure of

---

[10] The Seventh Circuit has not addressed the issue of pre-disclosure notification in the context of FOIA in any decisions.

[11] Pursuant to Executive Order 12,600, the DOL enacted regulations substantially similar to those found in DOD's FOIA regulations under 32 C.F.R. § 286.23 (regarding initial determinations).

the information requested *would* cause substantial competitive harm, but must show only that the DOL had 'reason to believe that disclosure . . . could reasonably be expected to cause substantial competitive harm.'" *Id.* at 167-68. The court found the DOL had satisfied this standard, especially given that OSHA Data sought information that could provide "'a submitter's competitors with insight into the productivity, hours worked, market share and production information of the company.'" *Id.* at 166 (quoting *OSHA Data/CIH, Inc. v. U.S. Dep't. of Labor*, 105 F. Supp. 2d 359, 365 n.7 (D.N.J. 1999)).

Plaintiff urges that *OSHA Data* "does not provide a basis for requiring pre-disclosure notification" in this case because his "request for a list of companies that have paid to use the TIC's Commercial lab is not proprietary information from any outside company and was not provided to the Army by any outside organization." (Pl.'s Resp. at 7.) The question of whether Plaintiff's request involved confidential information will be addressed in further detail below, but the court notes that Plaintiff appears to have minimized the nature of the data he has requested: he has not simply requested the names of the companies that paid the Army for testing at the TIC; rather, he also sought the amounts of money each company paid, as well as the dates on which the companies used the TIC. *OSHA Data* differs from this case in that the private companies in *OSHA Data* were statutorily required to provide sensitive information to the government, whereas the companies who furnished information here did so voluntarily in the hopes that the Army would later use their products. Still, the information Plaintiff now seeks was, in fact, provided to the Army by outside commercial vendors and the mere fact that such records *may* potentially be disclosed to the public under the FOIA does not mean the records are already "public," as Plaintiff suggests.

## B.   Substantial Competitive Harm

Defendant points out that it "made no decision on the merits of Nelson's FOIA requests, nor did it claim any exemptions under FOIA; rather, Nelson's FOIA requests were discontinued based upon his refusal to pay the pre-disclosure notification costs." (Def.'s 56.1 ¶ 19; Hargrave Dec.

¶ 15.) Plaintiff urges that this fact militates in his favor because none of the information he requested "includes any confidential, proprietary or trade secret data," (Compl. ¶ 9) and "Defendant has neither claimed nor established that Exemption 4 covers the information requested by the Plaintiff." (Pl.'s Resp. at 6.) But, as Defendants contend, in order "[t]o justify pre-disclosure notification, the Army did not need to conclude that the information was subject to Exemption 4 in the first instance. Rather, the Army needed only to show that the information sought in Nelson's FOIA request could reasonably be expected to cause substantial competitive harm to the vendor . . . ." (Def.'s Mem. at 6.) The court agrees that it need not address here whether Defendant has sufficiently demonstrated that Nelson's request ultimately falls within Exemption 4. As the Third Circuit in *OSHA Data* recognized, "[w]ithout complying with these notification procedures, the agency would have great difficulty engaging in any meaningful 'review'" to determine "whether the documents must be disclosed or whether they are exempt from disclosure." *OSHA Data*, 220 F.3d at 165. In short, the Army could not determine whether the information Plaintiff sought was even confidential under Exemption 4 until it initiated the pre-disclosure notification process, and it would not initiate that process unless Plaintiff paid the associated costs

Under the rationale of *OSHA Data*, to justify requiring pre-disclosure notification, Defendant needs only to show that disclosing the information could cause the commercial vendors substantial competitive harm. *Id.* at 167. The court finds that Defendant has met that burden through the declaration of its FOIA attorney, Caryn Hargrave. While the information Plaintiff requested may not involve the same level of confidentiality as was at issue in *OSHA Data*, Hargave's declaration points out the various ways the commercial vendors could be placed at a competitive disadvantage if the dates of TIC testing and the amounts they paid to use the facility were made public. In response, Plaintiff only offers generalized objections that do not raise a genuine issue of material fact. *See* FED. R. CIV. P. 56(e)(2) ("[A]n opposing party may not rely merely on allegations or denials . . . ; rather, its response must . . . set out specific facts showing a genuine issue for trial.") Accordingly,

11

the court concludes that Plaintiff's motions for summary judgment on Counts I, II and VI are denied.

**III.     Counts III, IV, & V**

    **A.     Count III—Fees**

Plaintiff argues that even if the court finds in favor of the Army on the pre-disclosure notification issue, Defendant nevertheless "unlawfully inflated the estimated fees to process Plaintiff's FOIA requests." (Compl. ¶ 74.) Under the FOIA, government agencies are permitted to promulgate regulations specifying a schedule of fees applicable to processing FOIA requests and establish guidelines "for determining when such fees should be waived or reduced." 5 U.S.C. § 552(a)(4)(A)(I). The Act further states that no fee may be charged "for the first two hours of search time or for the first one hundred pages of duplication" if the records "are not sought for commercial use and the request is made by an educational or non-commercial scientific institution, whose purpose is scholarly or scientific research; or a representative of the news media." 5 U.S.C. §§ 552(a)(4)(ii)(II)-(iv)(II). The Army has also promulgated its own regulations regarding the collection of fees in responding to FOIA requests.[12] *See* 32 C.F.R. § 286.29 (setting forth detailed rates for search time, review time, and duplication).

Defendant calculated the entire pre-disclosure notification process to require approximately 30 minutes of personnel work for each of the 45 vendors whose information was potentially subject to disclosure. (Hargrave Decl. ¶¶ 9, 14.) Using the DOD's fee schedule under 32 C.F.R. § 286.29, Defendant then estimated the costs of Plaintiff's first and second FOIA requests to total $600 and $599, respectively. (Hargrave Decl. ¶¶ 13-14.) Plaintiff claims that he made his FOIA requests for non-commercial, personal use, so the statute's no-fee rule should apply. *See* § 552(a)(4)(ii)(III). And, regardless of the purpose for which it is sought, Plaintiff argues that under 5 U.S.C.

---

[12]     The fee schedule for search and review time under 32 C.F.R. § 286.29 provides hourly rates for clerical ($20), professional ($44), executive ($75) and contractor-type ($44) personnel staff. 32 C.F.R. §§ 286.29(b), (d). Each of these rates correspond with Defendant's pre-disclosure notification cost estimates as described above.

§ 552(a)(4)(iv), "the [requested] information should [have been] provided for no fee." Plaintiff points out that the information would "easily fit on a single sheet of paper" and Plaintiff insists that Defendant's personnel should have been able to finish locating the information in less than 120 minutes. (Compl. ¶¶ 71, 73, 75.) In fact, in Plaintiff's view, the Army's improper cost estimate should itself be understood as an independent violation of FOIA. (Pl.'s Resp. at 37.)

The court disagrees. Plaintiff disputes Defendant's assertions about the search time required for Plaintiff's FOIA requests and the associated costs, but Plaintiff repeatedly conveyed his unwillingness to pay any pre-disclosure costs whatsoever, regardless of whether the Army included two hours free in its estimate or not. (Letter of 5/29/08, Ex. 4 to Compl.; Letter of 5/1/09, Ex. 11 to Compl.; Letter of 6/22/09, Ex. 13 to Compl.) In any event, the court is skeptical of Plaintiff's claim that he seeks the information for non-commercial use. To the contrary, Plaintiff has his own private computer testing facility and his request appears to be motivated by the fact that potential customers are seeking out testing from the TIC rather than from his laboratory. Accordingly, Defendant's motion for summary judgment with respect to Count III is granted.

### B. Count IV—Failure to Disclose Names

Plaintiff claims the Army failed to disclose the names of individuals responsible for denying his FOIA requests. Plaintiff points to several letters from the Army which he believes failed to set forth the names and titles of each person responsible for the denial of his request. (Compl. ¶ 78-82.) Yet in each of the specific letters he describes, the individuals in the Army's Office of Chief Counsel do, in fact, clearly identify themselves at every stage of the denial process. (Ex. 3, 7, 12, 13, 17 to Compl.) The court therefore grants Defendant's motion for summary judgment on Count IV as well.

### C. Count V—Timeliness Issue

Finally, Plaintiff asserts that Defendant failed to make timely determinations regarding his

FOIA appeals.[13] In its correspondence with Plaintiff regarding his appeals, Defendant acknowledged and apologized for the delay its response time, noting the large volume of FOIA requests it receives. Defendant explained that it responds to appeals in the order they are received and pointed out that *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976) authorizes this method of handling appeals. (Letter of 2/9/10, Ex. 7 to Compl.; Letter of 3/1/10, Ex. 17 to Compl.) Plaintiff is correct that the statute requires agencies to determine within 20 days whether to comply with a FOIA request and to make a determination with respect to any appeal within 20 days. § 552(a)(6)(A)(i)-(ii). A federal court may allow an agency additional time to complete its review if the agency can show that "exceptional circumstances exist and that the agency is exercising due diligence in responding to the request." 5 U.S.C. § 552(a)(6)(C). Defendant does not deny that it failed to meet the 20-day timeline with respect to its final decisions about Plaintiff's FOIA appeals. In this case, however, an order granting the Army additional time to complete its review of Plaintiff's request or compelling prompt compliance would be moot. Defendant has now responded to Plaintiff's FOIA requests. Plaintiff has not suggested any other remedy, and the statute does not authorize any award of damages for the delay. *See Cornucopia Inst. v. U.S. Dep't. of Agric.*, 560 F.3d 673, 675 n.1 (7th Cir. 2009). Plaintiff's motion for summary judgment on Count V is denied.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment [18] is granted Plaintiff's motion for summary judgment [20] is denied. This case is dismissed without prejudice to renewal of Plaintiff's FOIA request upon payment of the costs of pre-disclosure notice.

ENTER:

---

[13] Plaintiff appealed the denial of his first FOIA request on May 29, 2008 and did not receive a response from Defendant until February 9, 2009. (Letter of 2/9/10, Ex. 7 to Compl.) Plaintiff appealed the denial of his second FOIA request on June 22, 2009 and he did not receive a response from Defendant until March 1, 2010. (Letter of 3/1/10, Ex. 17 to Compl.)

Dated: February 22, 2011      _____
                              REBECCA R. PALLMEYER
                              United States District Judge